*In re* ROSE LEE ANN L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Lisa Ann Ramos *et al.*, Respondents-Appellants (Rose Lee Ann L., a Minor, Respondent-Appellee; D. Jean Ortega-Piron, Guardianship Administrator of the Department of Children and Family Services, Appellee; Patrick T. Murphy, Cook County Public Guardian, Appellant)).

First District (6th Division)   No. 1—98—2357

Opinion filed September 3, 1999.

Patrick T. Murphy, Public Guardian, of Chicago (Michelle Sullivan, of counsel), for appellant.

James J. Leven, of Chicago, for appellants Lisa Ann Ramos and Melvin Lewis.

James E. Ryan, Attorney General, of Chicago (Jan E. Hughes, Assistant Attorney General, of counsel), for appellee D. Jean Ortega-Piron.

Ilene L. Bloom, of Winston & Strawn, Bruce A. Boyer, of Northwestern University Legal Clinic, and Michael Dsida, Diane Geraghty, Stacey Platt, Anita Weinberg, all of Loyola Childlaw Center, all of Chicago, for appellee Rose Lee Ann L.

JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal from the circuit court of Cook County, child protection division. The Cook County State's Attorney filed a petition for adjudication of wardship of Rose Lee Ann L. (Rose), minor daughter of Lisa Ramos and Melvin Lewis, who are themselves wards of the State. The Cook County Public Guardian Patrick Murphy (public guardian Murphy or Murphy) had previously been appointed attorney and guardian *ad litem* for Lisa and Melvin in their individual cases. During the wardship proceedings regarding Rose, public guardian Murphy was appointed attorney for Lisa and Melvin in their capacity as Rose's parents. Public guardian Murphy moved to withdraw as their attorney, claiming he was unclear of his role as attorney for parents in abuse and neglect proceedings. The court denied his motion and thereafter entered a final dispositional order giving guardianship of Rose to D. Jean Ortega-Piron, guardianship administrator of the Illinois Department of Children and Family Services (DCFS). Public guardian Murphy now appeals from the order denying his motion to withdraw and raises the following issues: (1) whether the trial court erred in instructing him that he was obligated to play a traditional, adversarial role as counsel, aggressively attempting to keep out evidence that the parent may present a risk of serious bodily injury to his or her child, in child protection proceedings which are statutorily required to be nonadversarial; and (2) whether the trial court erred in denying his motion to withdraw. Appellee's response briefs were filed by: James K. Leven, court-appointed attorney for Lisa and Melvin on appeal; Jan E. Hughes, assistant Attorney General, on behalf of DCFS; Ilene L. Bloom of Winston & Strawn, on behalf of Rose; and Loyola ChildLaw Center as *amicus curiae* in support of Rose.

STATEMENT OF FACTS

On May 6, 1997, the Cook County State's Attorney filed a petition for adjudication of wardship of three-month-old Rose, minor daughter of Lisa and Melvin, alleging that she was neglected due to a lack of

care pursuant to section 2—3(1)(a) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2—3(1)(a) (West 1992)), in that Lisa had left Rose alone for at least half an hour. The petition was later amended to add the allegation that Rose was neglected due to the existence of an injurious environment pursuant to section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West 1992)), in that Lisa was involved in a physical altercation on or about April 22, 1997, with a young man while Rose was present. The State's Attorney also filed a motion for an order appointing the guardianship administrator of DCFS, D. Jean Ortega-Piron, the temporary custodian of the minor.

Lisa and Melvin were both 19 years old at Rose's birth and minor wards of the State. Public guardian Murphy had been appointed to represent Lisa and Melvin in their individual cases as abused and neglected children. At the temporary custody hearing for Rose on May 6, 1997, the trial court also appointed public guardian Murphy as attorney for Lisa and Melvin in the wardship action in their capacity as Rose's parents. Charles Sheets of Winston & Strawn was appointed attorney and guardian *ad litem* for Rose.

Prior to any evidence being heard at the temporary custody hearing, public guardian Murphy asked the court whether, as attorney for the parents, he was supposed to "play a traditional role in an attempt to vigorously represent [his] clients irrespective of the facts and to vigorously cross-examine and keep certain facts out, or [does he] play a more general role and try to advocate for what is in the best interest of the little girl." The trial judge advised Murphy that "the traditional role as attorney for mother and father is the role that you were appointed to." The temporary custody hearing then continued.

At the hearing, Lisa, Melvin, and Lisa's caseworker, Susan Cullen, testified. At the conclusion of the hearing, the court determined that there was an urgent and immediate necessity to remove Rose from both parents. The court placed Rose under the temporary custody of DCFS and ordered that the parents have only supervised visitation. The court also denied public guardian Murphy's request for a short date for certification of a question for appeal, but directed him to submit a written motion.

On May 14, 1997, public guardian Murphy filed a motion requesting that the court certify the following three questions for immediate appeal under Supreme Court Rule 308 (134 Ill. 2d R. 308):

> A. Does an attorney representing a parent in a child protection proceeding have an obligation to disclose to the court information that demonstrates that the parent may present a risk of serious bodily harm to the parent's defenseless child?
> B. If the attorney obtains information that his client may present

a risk of serious bodily harm to the client's child, in his role as attorney and guardian *ad litem* for the parent in the parent's case as an abused and neglected child, does the attorney have an obligation to attempt to keep this information out of evidence in the case of the parent's child?

C. Does the role of the parent's attorney change: (1) after the adjudication of the parent's child as an abused or neglected child; and (2) after the parent's child has been removed from the parent's guardianship?

DCFS filed objections to the motion, arguing that it was premature and that public guardian Murphy was seeking an advisory opinion on his ethical obligations to his clients. The law firm of Winston & Strawn, by attorney Ilene Bloom, also objected to the Rule 308 certification request.

On June 25, 1997, following a hearing on his motion,[1] Murphy revised and resubmitted his request for certification. His revised request asked that the following question be certified for appeal:

"Does an attorney representing a parent in a child protection proceeding have an obligation to disclose to the court information she received other than by conversations with her client but which demonstrates that the parent may present a risk of serious bodily harm or substantial neglect to the parent's defenseless child?"

DCFS and Winston & Strawn again filed objections to Murphy's request for certification.

On July 2, 1997, prior to a hearing on public guardian Murphy's revised request for certification, the court conducted an adjudicatory hearing and thereafter entered an order finding that Rose was abused or neglected due to a lack of care and an injurious environment.

On July 16, 1997, the court held a hearing on public guardian Murphy's request for certification and thereafter denied the request. Murphy then made an oral motion to withdraw as attorney for Lisa and Melvin. The court asked Murphy to put the request in writing. On August 1, 1997, public guardian Murphy filed a written motion seeking to withdraw from the case because "he is unclear about his role as attorney for parents in abuse and neglect proceedings." In his motion, Murphy stated that he was in a "quandary." He indicated that he "has information in his file of a work product nature which he and other lawyers on his staff have gleaned from both conversations with the respondent-parents as well as their analysis of documents in the case which lead them to a certain conclusion." He inquired:

"Assuming, for purposes of argument, that the conclusion is that it

---

[1]The transcript of the hearing, dated June 17, 1997, is not included with the record filed in this court.

would be harmful for to [sic] the child to live with the parents, must the Public Guardian vigorously pursue, with all of his legal acumen, and with all of his legal staff's resources, the litigation strategy set forth by the clients, or must he attempt to somehow reach a non-adversarial compromise which would protect the child and, at the same time, advance the cause of his clients?"

On September 3, 1997, the court held a hearing on public guardian Murphy's motion to withdraw. The court asked both Lisa and Melvin if they had any objections to allowing public guardian Murphy to withdraw from the case. They both stated that they did not. Nevertheless, the court denied Murphy's motion stating that Murphy failed to identify a point of conflict in his representation of Lisa and Melvin.

On January 21, 1998, the court entered a dispositional order adjudging Rose a ward of the court and placing her in the guardianship of DCFS. On March 16, 1998, this court granted public guardian Murphy's motion for leave to file a late notice of appeal.

DISCUSSION

Public guardian Murphy's brief on appeal focuses almost entirely on the purpose and policy of the Act, the nature of the role of the juvenile court judge, and the nature of the role of the child's representative. Murphy cites several cases and argues that the policy of the Act is "to protect the best interests of children in a non-adversarial system, and to provide assistance to parents so that children do not have to be removed from their families." He asserts that the court's "insistence" that he play an adversarial role in representing the parents is incompatible with the nonadversarial, nonpunitive and rehabilitative nature of child protection proceedings. He asks this court to determine on appeal "what role he should take when he believes that his client may present a serious risk of bodily harm to the client's defenseless child." Public guardian Murphy then tersely concludes by asking us to reverse the court's denial of his motion to withdraw if we disagree with the court's ruling that Murphy was to play a traditional adversarial role in representing the parents.

■ Although we agree with public guardian Murphy that the trial court erred in denying his motion to withdraw, we do so for reasons other than those advanced by Murphy in his brief. However, before reaching the propriety of the motion to withdraw, we first find that we are without authority to answer Murphy's question regarding the nature of an attorney's role in representing parents in a juvenile court proceeding. Public guardian Murphy presents us with a specific factual situation involving Lisa, Melvin, and Rose. He then presents several hypothetical scenarios involving hypothetical parents who are mentally

incompetent or who have violent propensities or who are sexually abusive. He then queries: What is my role in these situations? If we were to resolve public guardian Murphy's legal question, one which is not presented by the facts of this particular case but only through hypothetical scenarios, an advisory opinion would result. See *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 407-08 (1990). Thus, we decline to address this issue.

■ Moving on to the motion to withdraw, Supreme Court Rule 13(c)(3) provides that an attorney's motion to withdraw "may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable." 134 Ill. 2d R. 13(c)(3). Illinois courts have determined that Supreme Court Rule 13(c)(3) gives circuit courts the option of denying an attorney's motion to withdraw *only if* the granting of the motion would improperly delay the trial or would otherwise be inequitable. *Ali v. Jones*, 239 Ill. App. 3d 844, 849 (1993). It follows that the language of Rule 13(c)(3) does not authorize a trial court to deny a motion to withdraw for other reasons. Thus, an attorney may end the attorney-client relationship with or without cause so long as the client is not left in a position where he is prejudiced. *Herbster v. North American Co. for Life & Health Insurance*, 150 Ill. App. 3d 21, 29 (1986).

■ The court denied public guardian Murphy's motion to withdraw because the motion did not reveal any conflicts on the part of Murphy in his representation of Lisa and Melvin. The transcript of the hearing does not reveal any concern on the part of the court with whether granting the motion would have improperly delayed the trial or would have otherwise been inequitable. The court's sole concern was with Murphy's failure to identify any conflict in his representation. This is irrelevant. The question to be asked is whether any party in the proceeding would suffer prejudice if Murphy were allowed to withdraw.

The record reveals that Lisa and Melvin would not have suffered prejudice by Murphy's withdrawal. In fact, neither Lisa nor Melvin objected to Murphy's withdrawal. No other party objected to Murphy's withdrawal. In their briefs to this court, DCFS, Rose, Lisa and Melvin, and *amicus curiae* Loyola ChildLaw Center all agree that the court should have granted Murphy's motion to withdraw. Because Murphy's withdrawal would not have been unfair to any party, the court did not have discretion to deny the motion.

In addition, Lisa and Melvin's brief on appeal sets forth an additional, alternative basis to support the argument that Murphy should have been allowed to withdraw. They assert that Murphy had good cause to withdraw and we agree that he did. Rule 1.16 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.16) requires attorneys

to withdraw if their continued representation of the client would violate ethical rules under the rules. Rule 1.16(a)(2) provides in pertinent part:

> "A lawyer representing a client before a tribunal shall withdraw from employment (with permission of the tribunal if such permission is required) *** if:
>
> ***
>
> (2) the lawyer knows or reasonably should know that such continued employment will result in violation of these Rules." 134 Ill. 2d R. 1.16(a)(2).

Rule 1.2(a) requires a lawyer to abide by a client's decisions concerning the objectives of representation. 134 Ill. 2d R. 1.2(a). Thus, Lisa and Melvin assert that because Murphy was opposed to carrying out his ethical responsibilities under Rule 1.2(a), he was required to request withdrawal.

Both Lisa and Melvin expressed to the court that they desired to continue to care for and have custody of Rose. Public guardian Murphy, however, expressed to the court a number of times that he had difficulty in representing the parents in seeking to obtain their objectives. He inquired, "[w]hat do I do if I think that there is no way that this kid should ever live with the parents?" And, "what do we do if we know that these parents—or very firmly believe—no one can know everything in this life, but as much of our experience and intelligence permits, we really believe that the parents should not parent the child? What do we do under the circumstances?" Having recognized his own ethical dilemma, Murphy took the correct course of conduct in seeking to withdraw.

Accordingly, we hold that it was error for the court to deny his motion.

## CONCLUSION

For the foregoing reasons, we hereby reverse the trial court's order denying Murphy's motion to withdraw.

Reversed.

ZWICK and QUINN, JJ., concur.