772 N.E.2d 927 (2002)
332 Ill. App.3d 395
265 Ill.Dec. 556
In re J.D. and M.G., Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee,
v.
Shulanda D., Respondent-Appellant).
No. 1-01-2842.
Appellate Court of Illinois, First District, Fifth Division.
June 28, 2002.
*928 Rita Fry, Public Defender of Cook County, of Chicago (Robert C. Drizin, of counsel), for Respondent-Appellant.
Richard A. Devine, State's Attorney of Cook County, of Chicago (Renee Goldfarb, Nancy Kisicki, Carrie Strobel, of counsel), for Petitioner-Appellee.
Office of the Cook County Public Guardian, of Chicago, Patrick T. Murphy, Charles P. Golbert, Allisson D. Ortlieb, for Minors-Respondents-Appellees.
Justice GREIMAN delivered the opinion of the court:
On June 20, 2001, the parental rights of the respondent, Shulanda D., were terminated *929 as to her two children, J.D. and M.G. Respondent does not appeal the substance of the trial court's decision to terminate her parental rights; rather, respondent asks this court to review several procedural decisions made by the trial court. Upon review of the trial court's decisions, we affirm.
At the time of her birth in September of 1996, J.D. tested positive for cocaine and, as a result, was placed in the temporary custody of the Department of Children and Family Services (DCFS). M.G. was born in September of 1997 and came into the system shortly thereafter because respondent used drugs during her pregnancy. Since June of 1997, J.D. has resided with Elizabeth DeJesus, her foster mother, and since September of 1997, M.G. has resided with her foster mother, Ruth Dabney.
In December of 1998, the State filed supplemental petitions for appointment of a guardian with right to consent to adoption. The State alleged that respondent was unfit due to her failure to maintain a reasonable degree of interest, concern or responsibility as to J.D. and M.G.'s welfare and that respondent failed to make reasonable efforts to correct the conditions which were the basis for removal within nine months after adjudication and/or failure to make reasonable progress toward the return of the children within nine months after adjudication. 750 ILCS 50/1(D)(b), (D)(m) (West 2000).
At trial, George Udhub, a caseworker for DCFS, who was assigned to J.D's and M.G.'s cases in August of 1999, testified that respondent was noncompliant with the services requested of her. Specifically, Udhub testified that he was unsure of whether respondent participated in the required programs to an extent that allowed her to learn essential parenting skills. Moreover, Udhub stated that respondent was inconsistent in visiting J.D. and M.G.
Elizabeth DeJesus and Ruth Dabney, J.D.'s and M.G.'s respective foster mothers, also testified at trial. DeJesus testified that respondent interacted inappropriately with J.D. during their few visits, while Dabney testified that she never saw respondent interact inappropriately with M.G. Both foster mothers testified that respondent did not visit her children consistently.
Next, the State called Alicia Pickett to testify, but she was unavailable. Consequently, the State continued its case.
On February 20, 2001, the assistant public guardian called Baleria Baltazar, J.D.'s therapist, to testify. Respondent objected to Baltazar testifying because she was never listed as a witness prior to trial. Moreover, not until Baltazar was called as a witness did respondent receive a copy of the intake report that Baltazar prepared almost three weeks prior to being called as a witness. In response to defendant's objection to Baltazar testifying, the court allowed the parties to file briefs and set the motion hearing for February 28, 2001.
The assistant public guardian called Patricia Hightower, a case manager at Sullivan House, to testify. As the case manager for one of respondent's other children's cases, Hightower had the opportunity to observe several family visits between respondent and her children. Hightower testified that at these visits, respondent did not interact very much with J.D. and that M.G. appeared very upset at these visits.
On February 28, 2001, the trial court was to hear arguments on respondent's request to bar the testimony of Baleria Baltazar. There is no transcript of what occurred on February 28, 2001, and there is no written order stating the trial court's decision; however, the record does include the minors' response to interrogatories *930 filed on March 12, 2001. The minors' response includes information on what Baltazar would testify to and Baltazar's intake report.
On March 20, 2001, respondent filed a motion to reconsider the trial court's decision to allow Baltazar to testify. The trial court's ruling on this motion is not included in the record.
On April 9, 2001, the State resumed its case and called Alicia Pickett, a DCFS caseworker assigned to the minors' cases from November of 1997 through December of 1998, to testify. Pickett testified that respondent completed a parenting program; however, it was not the intensive program in which the judge wanted respondent to enroll. Pickett also stated that respondent began counseling through the Salvation Army and enrolled in an aftercare program at Haymarket. Lastly, Pickett stated that respondent claimed she attended support meetings, but Picket never received proof of her attendance. The State rested.
Next, the assistant public guardian called Baleria Baltazar to testify. Baltazar testified that she had been J.D.'s therapist since January of 2001 and that J.D. had been referred to her as a result of the fear she experienced before visiting with respondent. Baltazar testified that at these visits respondent did not interact appropriately with J.D. For instance, Baltazar stated that respondent did not show genuine interest in her conversations with J.D. and continuously told J.D. not to forget that her last name is different from her foster mother's last name. Furthermore, Baltazar testified that at these visits M.G. refused respondent's requests for him to sit on her lap.
At the conclusion of Baltazar's testimony, the assistant public guardian rested and respondent called Jane Rooney, a counselor at the Salvation Army Family Services, to testify. Rooney testified that beginning in March of 1998, she counseled respondent on the issues of drug abuse and depression. Respondent reported to Rooney that she had not used drugs since June of 1997 and that she had been participating in therapy consistently since the fall of 1998. Further, respondent told Rooney that during the fall of 1998 she received training as a certified nursing assistant and obtained a car. According to Rooney's testimony, in May of 1998, she recommended that respondent complete an aftercare outpatient treatment program; however, respondent did not complete this program until June of 1999.
Rooney testified that she observed several visits between respondent and J.D. More specifically, Rooney observed visits that took place in November and December of 1998. During these visits, Rooney noticed that J.D. reciprocated respondent's efforts at interacting with her. Moreover, Rooney stated that respondent seemed interested in J.D. and did not behave inappropriately. In the fall of 2000, Rooney observed respondent and J.D. interact at a court date. Before the proceeding began, Rooney stated that she saw J.D. take a lollipop from the clerk of the court, unwrap it, and offer it to respondent.
Rooney went on to testify that she approached J.D.'s foster mother in an attempt to lessen the tension between respondent and DeJesus, but DeJesus was not receptive. Rooney also testified that she spoke with respondent regarding her children's future and noted that respondent was ambivalent on this topic. However, Rooney testified that on about six occasions, she and respondent discussed the positive and negative aspects of releasing her parental rights. Respondent was primarily concerned that if her parental rights were terminated, J.D. would not be allowed to continue visiting with her other *931 siblings or with respondent. Rooney stated that respondent did not have the same concerns regarding M.G., because respondent's relationship with M.G.'s foster parents was not as tense as her relationship with J.D.'s foster parents.
Overall, Rooney testified that respondent had improved her life. For several months, Rooney stated that respondent had been working two jobs. Further, respondent leased an apartment, gained a good sense of self-esteem, and learned to better control her anger during stressful situations. At the conclusion of Rooney's testimony, respondent rested.
On April 25, 2002, the trial court found respondent to be an unfit parent to both J.D. and M.G. for failure to maintain a reasonable degree of interest, concern, or responsibility regarding their welfare and for failure to make reasonable progress toward their return home. Although the trial court judge found respondent to be unfit, she commended respondent for confronting her drug problem and staying sober, but noted that her efforts came too late. The trial court judge went on to state that as a result of respondent not making these efforts sooner, she was required, under the law, to hold that respondent is an unfit parent. The record reflects that at the moment the trial court judge announced the ruling, respondent lost control of her emotions and attacked both J.D.'s and M.G.'s foster mothers. In response to this physical altercation, the trial court entered an order of protection that protected both foster mothers from respondent. The court then continued the case for a hearing to determine the best interests of the children.
Before the hearing to determine the best interests of the children, respondent filed a motion for substitution of judge. In the motion, respondent argued that since the trial court judge observed the altercation between respondent and the foster parents, she could be called as a witness against respondent, which leads to the appearance of impropriety. Furthermore, according to respondent's motion, since the trial court judge will be ruling on the best interests of the children, impartiality is of the utmost importance.
On June 20, 2001, the trial court judge transferred respondent's motion for substitution of judge to the presiding judge for a hearing. The presiding judge denied respondent's motion for substitution of judge. The record does not contain a transcript of the hearing.
Respondent's attorney filed a motion to withdraw as counsel, arguing that according to the rules of professional conduct the motion should be granted because she could be called as a witness on behalf of respondent as well as against respondent. The trial court denied the motion, stating that if respondent's attorney was called to testify, her testimony would not violate the rules of professional conduct because nothing that respondent's attorney would testify to would place the attorney-client privilege in jeopardy since her testimony would involve the physical altercation she witnessed, which is independent from the case at bar.
The best interests hearing occurred on June 20, 2001. Nedra Jackson, J.D. and M.G.'s DCFS caseworker from March 30, 2001, through the time of her testimony, recommended that respondent's parental rights be terminated so that the children could be adopted by their respective foster parents.
Next, respondent called Mrs. DeJesus to testify. Mrs. DeJesus testified that from 1998 through 2000, J.D. cried before her visits with respondent. DeJesus also testified that she decided it was in J.D.'s best interest to no longer attend the visits because *932 J.D. now had an awareness of the tension between her foster mother and respondent. Mrs. DeJesus stated that she has never stated anything negative about respondent and that she wants J.D. to maintain relationships with her siblings.
Lastly, respondent testified on her own behalf. Respondent stated that she wants to continue a relationship with J.D. and M.G. as their mother, companion, and friend. Respondent expressed concern over J.D. and M.G. not having ongoing relationships with her other children if her parental rights are terminated.
The trial court ruled that it is in the best of interest of J.D. and M.G. to have respondent's parental rights terminated. The trial court specifically noted that by terminating respondent's parental rights, the children would develop a better sense of attachment and security toward their respective foster families. A permanency goal of adoption was entered for both children on June 20, 2001.
The first issue before us is whether the trial court properly allowed the trial testimony of Baleria Baltazar. Second, we consider whether the respondent's motion for substitution of judge was properly denied. Third, we examine whether the trial court properly denied respondent's attorney's motion to withdraw as counsel for respondent. We affirm the trial court's ruling on each of these issues.
Initially, we note that respondent has not produced an adequate record for review. It is well established that it is the appellant's duty to file an adequate record on appeal. In re K.S., 317 Ill.App.3d 830, 832, 251 Ill.Dec. 344, 740 N.E.2d 425 (2000). Moreover, Supreme Court Rule 321 provides (155 Ill.2d R. 321):
"The record on appeal shall consist of the judgment appealed from, the notice of appeal, and the entire original common law record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less. The common law record includes every document filed and judgment and order entered in the cause and any documentary exhibits offered and filed by any party. Upon motion the reviewing court may order that other exhibits be included in the record. The record on appeal shall also include any report of proceedings prepared in accordance with Rule 323. There is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court."
Without knowledge of the evidence or arguments at trial, or the basis for the trial court's decision, the reviewing court presumes that the trial court's decision was proper. Webster v. Hartman, 195 Ill.2d 426, 433, 255 Ill.Dec. 476, 749 N.E.2d 958 (2001); In re K.S., 317 Ill.App.3d at 832-33, 251 Ill.Dec. 344, 740 N.E.2d 425.
In regard to the first issue, respondent has included her attorney's oral objection to the testimony of Baleria Baltazar; however, respondent has failed to include a written motion by respondent and a transcript of the hearing indicating that the trial court heard arguments and ruled on this motion. A review of the record also indicates that there is no written order indicating how the trial judge ruled.
In regard to the second issue, the common law record includes respondent's written motion for substitution of judge and a written order indicating the presiding judge, Patricia Holmes, denied respondent's motion. The written order states that "[t]he transcript of ruling is hereby incorporated as written part of this order"; however, a review of the record indicates that respondent has failed to include the transcript from this hearing.
*933 Additionally, we note that the common law record is devoid of the State's four exhibits, the children's group exhibit, the respondent-father's three exhibits, and the respondent-mother's seven exhibits.
First, we examine the issue of whether the trial court properly allowed the trial testimony of Baleria Baltazar. Respondent argues that the trial testimony of Baleria Baltazar prejudiced her and should have been barred by the trial court. At trial, respondent objected to Baltazar's testimony on the basis of unfair surprise and noncompliance with the discovery rules, in particular Supreme Court Rule 213 (177 Ill.2d R. 213), which mandates disclosure and is subject to strict compliance by the parties. Respondent does not specify which subsection of Rule 213 was allegedly violated. Respondent also argues that allowing Baleria Baltazar to testify violated Supreme Court Rule 218(c) (166 Ill.2d R. 218) which provides that discovery must be completed 60 days prior to the commencement of trial. According to respondent, the assistant public guardian knew about the possibility of Baltazar testifying before the close of discovery, and, therefore, the trial court should have barred her testimony since no disclosure was made by the assistant public guardian.
We hold that the trial court did not abuse its discretion in allowing Baltazar to testify. Admission of evidence pursuant to Rule 213 is within the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of discretion. Seef v. Ingalls Memorial Hospital, 311 Ill.App.3d 7, 243 Ill.Dec. 806, 724 N.E.2d 115 (1999).
The record on appeal does not contain the transcript of the proceedings regarding respondent's motion to bar Baltazar's testimony; however, the following chronology of events can be gathered from the existing record. On November 16, 2000, a pretrial conference was held where the trial court decided that discovery was to remain open so that respondent could obtain further documents. There is no record of discovery ever being closed. On February 20, 2001, the unfitness hearing commenced, during which the assistant public guardian called Baltazar as a witness and respondent objected. There is no record that respondent served either the State or the minors with any interrogatories prior to February 20, 2001. The trial court continued the motion to a later date so that the parties could file written motions and briefs on the issue. The record is devoid of a written motion or brief filed by respondent. The children filed a written response to respondent's motion which is included in the record. The trial court heard arguments on the motion on February 28, 2001; however, there is no transcript of this hearing included in the record. The record contains a motion to reconsider, filed by respondent, asking the trial court to reconsider its February 28, 2001, decision to allow the Baltazar's testimony. According to respondent's motion to reconsider, the trial court granted respondent leave to depose Baltazar and/or serve the children with interrogatories. The record does not include any interrogatories served on the children or a deposition transcript; however, on March 12, 2001, the children filed their answer to respondent's interrogatories. Consequently, we assume that sometime after February 28, 2001, the children were served with an interrogatory. On April 9, 2001, the unfitness hearing resumed and Baltazar testified.
We are precluded from determining whether the trial court properly allowed Baltazar to testify because key documents are missing from the record on appeal. Specifically, the transcript from the hearing held on February 28, 2001, is *934 not included in the record; thus, we do not know with certainty how the trial court judge ruled on respondent's objection to Baltazar's testimony. From the material included in the record, it appears that the trial court allowed respondent additional time to serve the children with interrogatories and, if she wished, to depose Baltazar. In the absence of key documents, however, our judgment is premised on mere speculation, rather than on a concrete record. Without a transcript of the parties' arguments and the trial court's ruling on respondent's objection, we do not know the basis of the trial court judge's ruling, which makes it impossible for us to determine whether the trial court abused its discretion. At the appellate level, there is no room for speculation as to what occurred in the court below. See Webster v. Hartman, 195 Ill.2d 426, 433, 255 Ill.Dec. 476, 749 N.E.2d 958 (2001); In re K.S., 317 Ill.App.3d at 832-33, 251 Ill.Dec. 344, 740 N.E.2d 425. As a result, we affirm the trial court's decision to allow Baltazar's testimony.
Even if the record on appeal were complete, respondent would be unsuccessful in arguing that the minors violated Rule 213. The subject of Rule 213 is written interrogatories. An examination of Rule 213 reveals that the rule is predicated on the complaining party serving written interrogatories during discovery. A party must first serve the opposing party with a written interrogatory before it can allege a violation of Rule 213. In the case at bar, prior to the trial court hearing arguments on respondent's objection to Baltazar's testimony, respondent had not served any interrogatories on either the State or the children. Since respondent never served the children with a written interrogatory prior to the commencement of the fitness hearing, respondent cannot successfully argue that the minors violated any portion of Rule 213. Consequently, we hold that respondent has waived her right to argue that the minors have violated Rule 213.
Next, we consider whether the respondent's motion for substitution of judge was properly denied. Respondent's motion for substitution of judge is based on Supreme Court Rule 62 (155 Ill.2d R. 62). Supreme Court Rule 62 provides that a judge should avoid impropriety and the appearance of impropriety. In her motion for substitution of judge, respondent argues that since the trial court judge, Noreen Daly, observed the altercation between respondent and the foster parents, she should have recused herself; however, the trial court judge did not recuse herself. Rather, she transferred respondent's motion for substitution of judge to the presiding judge, Patricia Holmes.
The record on appeal only includes respondent's motion for substitution of judge and the order denying respondent's motion. The presiding judge's order clearly indicates that the motion was denied, but does not contain the basis for the denial. The order states the "[t]ranscript of ruling is hereby incorporated as written part of this order"; however, the transcript from this hearing is not included in the record. Since we have no knowledge of the arguments that are the basis for the presiding judge's decision, we cannot find that the trial court abused its discretion. As a result, we affirm the trial court's denial of respondent's motion for substitution of judge. See Webster v. Hartman, 195 Ill.2d 426, 433, 255 Ill.Dec. 476, 749 N.E.2d 958 (2001); In re K.S., 317 Ill.App.3d at 832-33, 251 Ill.Dec. 344, 740 N.E.2d 425.
A closer review of respondent's motion for substitution of judge reenforces our determination that respondent's motion was properly denied by the trial court. On appeal, the decision on a petition for substitution of judge will not be reversed *935 unless the trial court's decision was against the manifest weight of the evidence. In re Marriage of Schweihs, 272 Ill.App.3d 653, 659, 208 Ill.Dec. 875, 650 N.E.2d 569 (1995). Section 2-1001(a)(3)(i) of the Code of Civil Procedure provides that a party may move for a substitution of judge for cause. 735 ILCS 5/2-1001(a)(3)(i) (West 2000). Under the statute, an application for substitution of judge must be made by petition and verified by the applicant's affidavit. This court has held that where a petition for substitution of judge is not verified by an affidavit, it is properly denied by the trial court. County of Cook v. Renaissance Arcade & Bookstore, 150 Ill. App.3d 6, 21, 103 Ill.Dec. 112, 501 N.E.2d 133 (1986). In the case at bar, respondent's motion for substitution of judge is not verified by an affidavit and, therefore, does not satisfy the requirements of section 2-1001(a)(3)(ii) (735 ILCS 5/2-1001(a)(3)(ii) (West 2000)). For this reason, even a more detailed examination of this issue would lead us to find that respondent's motion for substitution of judge was properly denied.
Lastly, we consider whether the trial court properly denied respondent's attorney's motion to withdraw as counsel. Respondent argued to the trial court that she should be allowed to withdraw because she could be a potential witness in a separate criminal matter arising out of respondent's emotional outburst and attack on the foster mothers. The State argued to the trial court that this is not a valid reason for respondent's attorney to withdraw from the case. We agree with the State.
A trial court's ruling on a motion to withdraw will not be overturned on appeal absent an abuse of discretion. People ex rel. Burris v. Maraviglia, 264 Ill.App.3d 392, 398-400, 201 Ill.Dec. 285, 636 N.E.2d 717 (1993). A motion to withdraw as counsel is governed by Supreme Court Rule 13(c)(3) (134 Ill.2d R. 13), which provides in pertinent part:
"(3) Motion to Withdraw. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable."
"Illinois courts have determined that Supreme Court Rule 13(c)(3) gives circuit courts the option of denying an attorney's motion to withdraw only if the granting of the motion would improperly delay the trial or would otherwise be inequitable." (Emphasis omitted.) In re Rose Lee Ann L., 307 Ill.App.3d 907, 912, 241 Ill.Dec. 52, 718 N.E.2d 623 (1999), citing Ali v. Jones, 239 Ill.App.3d 844, 849, 180 Ill.Dec. 586, 607 N.E.2d 655 (1993).
In the case at bar, the trial court judge denied counsel's motion to withdraw because it was brought in the middle of trial and granting the motion would deny the mother competent representation. The trial court stated:
"THE COURT: I do not think it [granting the motion] would only delay [this matter]. This matter's been pending long enough and quite frankly also Ms. [D] needs competent representation and consistent representation that you have given her. Anything less at this juncture and an important stage would work to her detriment so I am going to deny the motion."
In light of the trial court's reasoning, we find that pursuant to Supreme Court Rule 13(c)(3) and the well established law of this State, the trial court did not abuse its discretion in denying counsel's motion to withdraw.
Additionally, we find that under the Rules of Professional Conduct, the trial *936 court properly denied counsel's motion to withdraw. Illinois Rules of Professional Conduct 3.7(a) and 3.7(b) (134 Ill.2d Rs. 3.7(a), (b)) prohibit an attorney from acting as both an advocate and as a witness on behalf of her client in the same proceeding. This interpretation of Rules 3.7(a) and 3.7(b) was followed in People v. Blue, 189 Ill.2d 99, 136, 244 Ill.Dec. 32, 724 N.E.2d 920 (2000), where the supreme court found that "the State's objections violated the `advocate-witness rule,' which bars attorneys from assuming a dual role as advocate and witness in the same proceeding." See People v. Young, 128 Ill.2d 1, 24-25, (1989); People v. Beals, 248 Ill. App.3d 19, 25, 187 Ill.Dec. 682, 618 N.E.2d 273 (1992). In the case at bar, respondent's attorney would not be called to testify in the child protection proceeding now on appeal. If respondent's attorney was called as a witness it would be in an entirely different proceeding; the criminal proceeding involving her attack on the foster mothers. Since we find that respondent's attorney failed to show that her continued representation would lead to a violation of the rules of professional conduct, we affirm the trial court's decision to deny respondent's attorney's motion to withdraw as counsel.
For the foregoing reason, we affirm the decision of the trial court.
Affirmed.
QUINN and REID, JJ., concur.