THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID KELLER, Defendant-Appellant.

Fifth District    No. 5—02—0371

Opinion filed November 20, 2003.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Bill Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MAAG delivered the opinion of the court:

The defendant, David Keller, appeals the dismissal of his postconviction petition. The defendant filed a motion for reconsideration, and the circuit court denied the motion. The defendant filed a timely notice of appeal. We reverse and remand.

The relevant facts are as follows. A jury found the defendant guilty of first-degree murder and attempt (armed robbery) on September 24, 1993. On October 21, 1993, the circuit court extended the time for filing posttrial motions until a transcript of the trial had been prepared. The defendant was sentenced to 35 years' imprisonment for first-degree murder and 10 years' imprisonment for attempt (armed robbery). At the conclusion of the hearing, the circuit court informed the defendant of his right to appeal.

On March 24, 1994, the defendant filed a motion for the modification of his sentence. On June 9, 1994, the defendant filed a motion for a new trial. On June 17, 1994, the circuit court denied the defendant's motion for a new trial. On April 11, 1996, the circuit court modified the defendant's sentence for first-degree murder to 30 years' imprisonment. Throughout all of the foregoing proceedings, the defendant was represented by attorney Thomas Hildebrand. The defendant did not file a direct appeal to this court.

On July 23, 1999, the defendant filed a *pro se* petition for postconviction relief. In the petition, the defendant alleged that at the sentencing hearing, he had told Hildebrand that he wanted to appeal. Hildebrand allegedly assured the defendant and his mother that Hildebrand would perfect the appeal. Many months later, the defendant asked his mother to contact Hildebrand because he had not heard from him. Hildebrand allegedly told the defendant's mother that he was working

on the appeal and that the appeal would take three to four years. In the early part of 1999, the defendant's mother learned from the clerk of the court that Hildebrand had never filed a notice of appeal.

The circuit court appointed attorney John Delaney to represent the defendant in the postconviction proceedings. Delaney then filed an amended petition for postconviction relief. He reiterated the defendant's claim about Hildebrand not appealing his case. The State did not respond to the petition or move to dismiss it. The court held a hearing on the petition. The colloquy between the court and Delaney was as follows:

"THE COURT: *** [M]y understanding is *** that contingent upon the Court re[ ]establishing Mr. Keller's appellate rights in this case, you are going to withdraw the post[ ]conviction petition and amend the post[ ]conviction petition. Is that correct?

MR. DELANEY: Correct, Your Honor.

\* \* \*

THE COURT: *** [I]n reviewing all of the court files and transcripts, *** we probably don't have to reach the issues in your post[ ]conviction petition because they will be cured by what I am going to do here in a second; and that is, upon review of the transcripts, it looks like while you were advised of your rights at one time, you were not advised of your rights at the completion of the proceedings. So, I am going to do that today and start your thirty days for filing of the Notice of Appeal."

The court then ordered the clerk to file a notice of appeal for the defendant, and the clerk did so. The defendant then withdrew his postconviction petition.

This court then dismissed the defendant's appeal because it was not timely filed. *People v. Keller*, No. 5—99—0818 (2001) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). This court also stated that the circuit court cannot extend the time to file a notice of appeal pursuant to the Illinois Supreme Court rules. Additionally, this court rejected the defendant's argument that the appeal was from the granting of his postconviction petition, because the defendant had withdrawn the postconviction petition.

On July 10, 2001, the defendant, by attorney Curtis Blood, filed a motion for leave to file an amended postconviction petition, and an amended postconviction petition. Within the petition, the defendant alleged that Hildebrand had disregarded his directive to appeal the convictions and sentences. The defendant also alleged that the circuit court had failed to advise him of his right to appeal after he was resentenced. The State did not file an answer or a motion to dismiss the petition, and the cause proceeded to an evidentiary hearing.

At the hearing, the court stated that on July 12, 2001, it had granted the defendant's motion for leave to file an amended postconviction petition. The defendant testified that he had told Hildebrand that he wanted to appeal the convictions and sentences. The defendant also talked about the direct appeal that this court denied: "The Court had granted me an appeal. *** My attorney *** advised me that *** once the judge grants you your right [to appeal][,] then what you have to do is withdraw the post[ ]conviction petition and be granted your right to appeal."

The defendant's mother, Deborah Keller, testified that she had hired Hildebrand to represent the defendant at the trial. Thereafter, she paid Hildebrand approximately $1,300 for transcripts to get the appeal started. Hildebrand told her that "it would take a while to get the appeal going" and that the appeal would take from three to five years.

Hildebrand testified that he had been retained to represent the defendant at the trial. He did not recall anyone asking him to represent the defendant on appeal. The following colloquy then occurred:

"Q. [Susan Jensen—Assistant State's Attorney:] Okay. After the conviction and the sentencing, did you have any discussion with either Mr. Keller or his mother about appeals?

A. [Thomas Hildebrand:] No. To my knowledge and belief, I did not. Again, I need to see the transcripts. I would think that probably I would have done[—]my custom and practice would have been, as any time, would have been to have the judge instruct the clerk to file a notice of appeal.

Q. So that if that was not done, if the record did not reflect any notice of appeal being filed, would that mean you did not discuss appeals with the defendant?

A. I wouldn't have filed a notice of appeal on behalf of the defendant unless I was the attorney for the defendant for an appeal.

Q. Do you recall the defendant ever asking you or telling you that he wanted to appeal his conviction?

A. He may have. But, again, I would not have undertaken to do anything on his behalf unless and until I was retained as his attorney for an appeal. That is a whole separate procedure than trying the case. It is a whole different ballgame.

Q. Do you recall having any discussions with *** Deborah Keller about obtaining transcripts?

A. I would—again, I don't have my notes in front of me. If I had any discussion regarding retaining transcripts, it would have been for the purpose of handling any post[ ]trial motions. It wouldn't

have been for handling an appeal unless and until I had entered my appearance and filed a motion[—]a notice of appeal on his behalf. I saw the affidavit in there, something about me telling them an appeal would take three or four years. I never made that statement to anybody in my life. Appeals don't take three or four years, especially criminal appeals."

Later, the defendant's attorney questioned Hildebrand about the same issue:

"Q. [Curtis Blood:] Did I understand you to say that *** David Keller may have asked you to file an appeal ***?

A. *** I don't have my file in front of me. *** To my knowledge and belief, I am sure Mr. Keller *** wanted to appeal his sentence. I don't recall off[ ]hand what we did. I am just telling you that I am sure we discussed he probably wanted to appeal a conviction. *** But, as to whether or not I agreed that I would represent him on appeal, I did not undertake to represent him on an appeal.

* * *

Q. You are sure you did not agree to do an appeal for Mr. Keller?

A. I do very few criminal appeals. Had I been retained to do a criminal appeal, there would have been some money up front and there would have been a notice of appeal filed. Again, I don't have the file in front of me to look at it and see what was done or what wasn't done with Mr. Keller's case.

* * *

Q. Did you file a notice of appeal in the case, Tom?

A. No. That is what I told you the last three times you asked me.

Q. Okay. Do you recall Mr. Keller being interested in appealing, wanting to appeal, but you were not retained? Am I saying that right?

A. That would be correct. I wasn't his Counsel for an appeal."

The circuit court took the matter under advisement, and with regard to the withdrawal of the defendant's postconviction petition, the court noted, "I don't know if that is contingent upon anything or what the expectation [sic]."

On March 6, 2002, the circuit court entered an order dismissing the postconviction petition. The court stated, in relevant part, as follows:

"The defendant was granted leave to file an Amended Post[-]Conviction Petition on July 10, 2001 [sic]. The granting of leave to file such an Amended Petition does not necessarily of itself indicate that the Court has jurisdiction or *** is granting jurisdiction concerning the petition. *** The Petition filed and presented was an amendment to a then *non*[ ]*existing* Petition. Accordingly, it is

dismissed. Additionally, even if the Court should liberally construe the pleading as a newly filed Post-Conviction Petition, the time of the filing is far outside the statutory time limits as dictated by the dates of the conviction and disposition several years before." (Emphasis in original.)

On April 4, 2002, the defendant filed a postjudgment motion for reconsideration in which he attempted to address the circuit court's concerns about the dismissal of the postconviction petition in 1999 and the timeliness of the filing of the amended postconviction petition. The circuit court denied the motion. The defendant filed a notice of appeal.

On appeal, the defendant claims that he was denied the effective assistance of counsel when his attorney did not act on the defendant's directive to appeal the defendant's convictions and sentences. For this reason, the defendant asks this court to remand the cause to the circuit court with directions to provide the defendant a direct appeal.

■ The Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2000)) provides a mechanism by which those under a criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Coleman*, 183 Ill. 2d 366, 378-79, 701 N.E.2d 1063, 1070-71 (1998). A petition for postconviction relief is not an appeal of the underlying judgment; rather, it is a collateral proceeding. As such, a postconviction proceeding allows an inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal. Thus, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered waived. *People v. Johnson*, 206 Ill. 2d 348, 356, 794 N.E.2d 294, 300 (2002). The standard of review has been reduced to a simple formula: a *de novo* review for the dismissal of a postconviction petition without an evidentiary hearing and a review for manifest error when a petitioner's constitutional claims have been denied following an evidentiary hearing. *Johnson*, 206 Ill. 2d at 357, 794 N.E.2d at 301; see *People v. Pitsonbarger*, 205 Ill. 2d 444, 456, 793 N.E.2d 609, 619 (2002).

As we previously stated, this case is on appeal from the denial of the defendant's amended postconviction petition. The postconviction petition alleged as follows: "(1) Mr. Keller received ineffective assistance of counsel when his trial attorney failed to request pre[ ]trial dismissal under the state speedy-trial statute [citation]; (2) Mr. Keller received ineffective assistance of counsel when his trial attorney failed to appeal the judgment against him; and (3) the circuit court failed to

advise Mr. Keller of his rights to appeal after resentencing him." The circuit court disposed of the defendant's petition after an evidentiary hearing, stating that it had been presented as an amendment to "a then *non[ ]existing* Petition" (emphasis in original) because the original postconviction petition had been withdrawn. The circuit court then dismissed the amended postconviction petition. We disagree with this ruling by the circuit court.

■ The amended postconviction petition should have been treated as if it were a new postconviction petition. The circuit court explained why it would not treat the petition as if it were a new postconviction petition: "[T]he time of the filing is far outside the statutory time limits as dictated by the dates of the conviction and disposition several years before." While it is true that the Act sets forth certain time constraints for the filing of a postconviction petition, the Act also states that the petition can be filed at any time if the "petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122—1(c) (West 2000). The defendant in the instant case has alleged such facts.

■ The record shows that the circuit court failed to properly advise the defendant of his direct appeal rights. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001. Additionally, the defendant requested an appeal, and Hildebrand admitted that he knew that the defendant wanted to file a notice of appeal. Hildebrand failed to file the notice of appeal and did not withdraw as the defendant's attorney of record. See 134 Ill. 2d Rs. 13 (an attorney may not withdraw without leave of court), 1.16 (a lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client and allowing time for the employment of other counsel); *In re Rose Lee Ann L.*, 307 Ill. App. 3d 907, 912, 718 N.E.2d 623, 627 (1999) ("an attorney may end the attorney-client relationship with or without cause so long as the client is not left in a position where he is prejudiced").

The State claims that in order for the defendant to succeed, he must show merit to the direct appeal that he was denied, and it cites *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000), *People v. Edwards*, 197 Ill. 2d 239, 757 N.E.2d 442 (2001), and *People v. Hughes*, 329 Ill. App. 3d 322, 767 N.E.2d 958 (2002), to support this position. We disagree.

■ In *Peguero v. United States*, 526 U.S. 23, 28, 143 L. Ed. 2d 18, 24, 119 S. Ct. 961, 965 (1999), the United States Supreme Court, describing the holding in *Rodriquez v. United States*, 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715 (1969), stated the rule as follows: "[W]hen

counsel fails to file a requested appeal, a defendant is entitled to \*\*\* an appeal without showing that his appeal would likely have had merit.'' This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. *Flores-Ortega*, 528 U.S. at 477, 145 L. Ed. 2d at 995, 120 S. Ct. at 1035. Additionally, the foregoing cases cited by the State are distinguishable from the instant case because the defendants in those cases pleaded guilty. The defendant in the case at bar argues that his case is similar to *People v. Moore*, 133 Ill. 2d 331, 338-39, 549 N.E.2d 1257, 1260-61 (1990), because, like the *Moore* case, the defendant here was convicted at a trial and his attorney did not secure for him a direct appeal. While we agree that this case is more akin to *Moore* than the foregoing cases cited by the State, the *Moore* decision is also distinguishable because a notice of appeal was filed in that case. Although the appeal in *Moore* was initially dismissed for lack of prosecution, the Illinois Supreme Court *reinstated* the appeal because the dismissal of the appeal had been solely due to the defendant's counsel's failure to comply with the appellate rules. In the instant case, no notice of appeal was filed, so the appeal could not be *reinstated* as in the *Moore* decision.

The instant case is controlled by the United States Supreme Court's decision in *Rodriquez v. United States*, 395 U.S. 327, 23 L. Ed. 2d 340, 89 S. Ct. 1715 (1969). In *Rodriquez*, the defendant was convicted at a trial, and his attorney did not secure for him a direct appeal to which he was entitled. The *Rodriquez* Court, referring to the fact that the petition failed to specify the points that the petitioner would raise if he were given a right to appeal, stated, "[t]hose whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings.'' 395 U.S. at 330, 23 L. Ed. 2d at 344, 89 S. Ct. at 1717. The *Rodriquez* Court also noted that the trial judge had failed to advise the defendant of his right to appeal. The *Rodriquez* Court reversed and remanded the case to the district court for the petitioner to be resentenced, even though he had been sentenced six years earlier, so that he could perfect an appeal in the manner prescribed by the applicable rules.

■ Likewise, in the instant case, the only effective relief that this court can give the defendant is to restore his right to a direct appeal. For this reason, we reverse the circuit court's dismissal of the defendant's postconviction petition, and we remand this case to the

circuit court to resentence the defendant. The defendant must then file a notice of appeal in accordance with Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)) to be entitled to a direct appeal of his convictions and sentences.

Reversed; cause remanded with directions.

CHAPMAN and WELCH, JJ., concur.