2015 IL App (3d) 140981

Opinion filed May 26, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* S.W. and S.W., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Minors | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos. 3-14-0981 |
| Petitioner-Appellee, | ) | 3-14-0982 |
| | ) | Circuit Nos. 09-JA-311 |
| v. | ) | 11-JA-167 |
| | ) | |
| S.L.W., | ) | |
| | ) | |
| Respondent-Appellant). | ) | Honorable Albert L. Purham, |
| | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1       After finding minors Sh.W. and Sp.W. neglected, the court conducted an unfitness hearing and a best interests hearing. Prior to the unfitness hearing, respondent fired three court-appointed attorneys, each time stating that she did not think the attorney provided her with adequate representation. The court delayed the unfitness hearing from April 16, 2014, until August 20, 2014, to allow respondent's fourth court-appointed attorney ample time to prepare the case.

¶ 2       On the day of the unfitness hearing, respondent told the court that she wished to continue without her fourth court-appointed attorney and requested a 90-day continuance to hire private counsel. The court informed her that it would proceed with the hearing with or without counsel. Respondent still chose to fire her attorney. The court conducted the hearing and found respondent to be unfit. The court scheduled the best interests hearing for one month later. One week prior to the best interests hearing, respondent, again, requested a continuance, which the court denied. The court stated that it would proceed with the hearing whether or not respondent was present. Respondent neither retained private counsel nor attended the best interests hearing. After the State presented evidence, the court found that it was in the minors' best interests to terminate respondent's parental rights.

¶ 3       Respondent appeals, arguing that the court: (1) erred by denying her requests for continuances; and (2) denied her right to due process. For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5       Respondent is the mother of Sh.W. (born November 23, 2009) and Sp.W (born February 2, 2011). The State filed a petition for adjudication of wardship of Sh.W. prior to Sp.W.'s birth. Shortly after Sp.W.'s birth, the State filed a petition for adjudication of wardship of Sp.W. Ultimately, the court consolidated the two cases.

¶ 6       The State initiated the first case against respondent on December 18, 2009. The State filed a petition for adjudication of wardship of Sh.W. alleging neglect in that the minor's environment was injurious to her welfare. The State named J.W. as Sh.W.'s putative father. Specifically, the petition alleged that respondent suffered from mental health problems, had recently been suicidal, left the minor unsupervised, and was hospitalized in the inpatient

2

psychiatric unit at Methodist Hospital in Peoria, Illinois. The petition further alleged that both respondent and J.W. had criminal records and used cannabis.

¶ 7        On December 21, 2009, the court appointed attorney Louis Milot to represent respondent. On January 11, 2010, respondent responded to the petition, admitting to all of the allegations except those alleging that respondent had recently been suicidal and was convicted of the manufacture and delivery of a controlled substance. She admitted that at some point she had been suicidal. Respondent believed she was convicted of simple possession. The court conducted the adjudicatory hearing on March 8, 2010. Respondent was present in court. The court found that respondent neglected the minor.

¶ 8        The court held a dispositional hearing as to Sh.W. on April 5, 2010. A caseworker from Catholic Charities submitted a report she authored, including integrated assessments, a counseling report from Lifeline Connection Advocacy Center, mental health treatment records, a report from the Crittenton Center, and one toxicology report from February of 2010 for the hearing. The counseling report indicated that respondent suffered from mental disabilities, anxiety, and suicidal thoughts. The counselor did not have face-to-face contact with respondent, but talked to respondent on the phone on 10 occasions. The report from Catholic Charities indicated that respondent lived on Howett Street in Peoria, Illinois. The caseworker suspected that J.W. also lived there. Respondent received psychiatric care and counseling for her mental health problems. She regularly took her prescription medication. Respondent admitted to using drugs and alcohol between January and March of 2010, which potentially interfered with the effectiveness of her medication. Respondent completed parenting classes at the Crittenton Center prior to the dispositional hearing.

3

¶ 9    The integrated assessments indicated that respondent admitted she had prior involvement with the Illinois Department of Children and Family Services (DCFS) with Sh.W.'s two older siblings. Respondent started using alcohol and marijuana as a minor.

¶ 10    The mental health records from OSF St. Francis Behavioral Department indicated that a doctor diagnosed respondent with bipolar I disorder with rapid cycling. Doctors prescribed Ativan, Trazadone, Depakote, and Ambien.

¶ 11    The court found respondent to be unfit. The court ordered respondent to cooperate with DCFS, complete two random drug drops per month, participate in and successfully complete counseling, complete substance abuse treatment, and continue receiving psychiatric care, taking medication and following doctor's recommendations. On May 24, 2010, the court adjudicated the minor a ward of the court and named DCFS as guardian of the minor.

¶ 12    The court conducted two permanency review hearings as to Sh.W. in September 2010 and January 2011. In January 2011, the court found respondent unfit, but gave DCFS and Catholic Charities the power to return the child home without further order of the court.

¶ 13    Respondent gave birth to Sp.W. on February 2, 2011. Sh.W. returned home on March 16, 2011. Respondent and the minors resided at the Y Village. The court held a permanency hearing as to Sh.W. on April 4, 2011, where the court set the goal as the minor remaining home.

¶ 14    The State filed a second case against respondent on July 19, 2011. The State named J.W. and A.B. as Sh.W.'s putative fathers. The petition for adjudication of wardship of Sp.W., alleged neglect in that the minor's environment was injurious to her welfare. Specifically, the petition alleged that respondent suffered from mental health problems, missed some required drug drops, and grabbed one of her children saying she would hit his "motherfucking ass" when he got home if he did not "calm his motherfucking ass down." Respondent responded on

September 12, 2011, stating that she did not have a dirty drop and that she did not carry out the threats made to her child. On October 31, 2011, after an adjudication hearing, the court found Sp.W. neglected.

¶ 15    On December 19, 2011, the court conducted a dispositional hearing as to both Sh.W. and Sp.W. Abigail Tear, the Y Village director, submitted a letter stating that a Y Village employee called DCFS after finding the minors alone in their apartment. The employee did not look throughout the building for respondent. Tear also stated in her letter that respondent went to the neighbor's apartment quickly to borrow something while the infant slept and the other minor was watching television. The employee was angry with respondent about a conversation that took place earlier in the day. Tear believed that the employee called DCFS as a retaliatory measure. Tear faulted her employee for overreacting and stated that removing the minors from respondent's care for that incident would be unconscionable. Respondent's recovery specialist at the Human Service Center also submitted a letter that spoke favorably of respondent's work on her treatment and recovery goals. The court found respondent to be fit and that placement of the children was not necessary over the State's objection. The court set the goal for the children to return home. The State returned the children home after the hearing.

¶ 16    The court conducted a permanency review hearing as to Sp.W. on May 7, 2012. The Court Appointed Special Advocates (CASA) worker submitted a letter, stating that respondent was doing everything asked of her, consistently taking her medications, and attending therapy. The court set the goal for Sp.W. to remain home.

¶ 17    On August 24, 2012, the State filed a motion for unfitness, alleging that respondent tested positive for marijuana and admitted to smoking marijuana at a friend's house. The State further alleged that Dream Center, formerly Y Village, kicked respondent out after she broke the rules.

Respondent moved to Galesburg, Illinois, after Dream Center kicked her out. After conducting a hearing on September 20, 2012, the court found respondent to be unfit.

¶ 18 The court conducted another permanency review hearing as to both minors on November 5, 2012. The court found that respondent failed to make reasonable efforts to achieve her service plan and permanency goal. The court changed the goal from the minors remaining home to the minors returning home pending status. The State removed the children from respondent's care.

¶ 19 The court held another hearing on March 18, 2013. Milot informed the trial judge that respondent requested a few more minutes to speak with him. When respondent and Milot returned to the courtroom, respondent requested a "*Marsden* hearing." *People v. Marsden*, 2 Cal. 3d 118 (1970). Respondent explained the little she knew about such a hearing and requested new representation. Ultimately, the court held that respondent was not entitled to a *Marsden* hearing; this is a civil case, not a criminal case. The court told respondent to state her reasons for requesting new counsel or continue with Milot. Respondent stated:

> "I am extremely dissatisfied with the representation or lack thereof that Mr. Milot has defined. Throughout these proceedings there's been no objections to any evidence or lack thereof. Mr. Milot has not required the State to provide the preponderance of evidence which states that there needs to be some tangible proof that my behavior has caused some harm to my children."

¶ 20 The court stated that respondent's reasons for wanting new counsel were without merit and unbelievable. Despite finding that respondent was dissatisfied with the court's findings, the court allowed Milot to withdraw and appointed attorney Phil Pollack.

6

¶ 21 The court continued the permanency hearing until May 1, 2013. At that hearing, respondent informed the court that she wished to move to continue the case. The court informed respondent that she needed to discuss the issue with Pollack. Pollack responded, "I've discussed the matter with [respondent], both over the telephone and today. I don't believe ethically I can assist in making such a motion. I know of no legal basis for it." The court told respondent that it was not inclined to consider a motion to continue, regardless of who made the motion. Respondent said that she could not proceed; she did not think Pollack fully understood the motion she wanted to raise and Pollack did not properly communicate with her. The court asked respondent if she wished to represent herself and she said she did. The court discharged Pollack and respondent represented herself. During the hearing, respondent continued to interrupt the court, despite a warning that the court would hold her in custody if she failed to stop interrupting. Ultimately, the court placed respondent in a holding cell for a period of minutes to let her "cool off." After respondent returned to the courtroom and the parties finished presenting evidence, the court changed the goal from returning home pending status to substitute care pending termination of parental rights.

¶ 22 The State filed petitions for termination of respondent's parental rights on September 4, 2013. The petitions alleged that respondent was unfit and failed to make reasonable progress toward the return home of the minors. The court appointed attorney Dana Kelly to represent respondent. Kelly filed a response on behalf of the respondent denying the allegations. On January 22, 2014, the court held a pretrial conference on the termination petitions. Kelly represented respondent at the conference. The court set trial for April 16, 2014. Prior to trial, the court discharged Kelly based on respondent's allegations that Kelly "had her own issues" and failed to provide adequate representation. The court appointed respondent's fourth counsel,

7

attorney Adam Bowton. Bowton requested a continuance in order to prepare the case. The court granted the continuance and rescheduled trial for June 25, 2014. On that day, Bowton requested a second continuance, which the court granted over the State's objection. The court continued the trial until August 20, 2014.

¶ 23    At the beginning of the trial, respondent informed the court that she did not want to proceed with Mr. Bowton. Respondent also requested a 90-day continuance in order to hire private counsel. Respondent stated that she had yet to hire private counsel; she had a difficult time finding someone to represent her. The State objected to Bowton's withdrawal and the continuance. The court informed respondent that the case would proceed that day, regardless of whether counsel represented respondent. Bowton stated that he was thoroughly prepared to represent respondent. After Bowton and respondent discussed the matter, the court, again, reminded respondent that the hearing would proceed with or without Bowton. Respondent stated that she understood, but still wished to proceed without Bowton. The court discharged Bowton and commenced the termination proceeding. At lunch, the court continued the matter until September 4, 2014.

¶ 24    On September 4, 2014, respondent appeared in court and requested a continuance; she received hundreds of papers from Bowton's file and was not prepared. The State objected and the guardian *ad litem* (GAL) agreed with the State. The court denied respondent's motion. Respondent presented the testimony of the caseworker, who previously testified on August 20, 2014. The court, again, continued the case until October 16, 2014, after respondent said she wanted to call witnesses who were not present in court that day. On October 16, 2014, respondent informed the court that she did not have any more witnesses to call, no further evidence to present, and no new attorney. The court found that the State proved that respondent

8

was unfit by clear and convincing evidence. The court scheduled the best interests hearing for November 20, 2014.

¶ 25 On November 13, 2014, respondent filed a written motion to continue the best interests hearing until December 31, 2014, or after, alleging that she could not afford to travel to Peoria for the hearing and that she did not get paid until November 17, 2014. She further alleged that she was unaware of the November 20, 2014, hearing date until November 13, 2014. The State and the GAL objected, arguing that respondent knew of the November 20 hearing date; respondent was present in court on October 16, 2014, when the court scheduled the November 20, 2014, best interests hearing. Further, the court scheduled the hearing for 3 p.m. to accommodate respondent's schedule. The trial court denied respondent's motion and stated that respondent needed to attend the best interests hearing. The court stated that it would proceed with the hearing whether or not respondent was present.

¶ 26 Respondent neither appeared in court on November 20, nor retained private counsel to represent her. The court proceeded with the best interests hearing as scheduled. The best interests hearing report established that the foster parents wanted to adopt the minors. The foster parents met the minors' needs and provided care. The minors shared a strong bond with the foster parents and had support from the community. The court found it to be in the minors' best interests to terminate respondent's parental rights and entered an order to that effect on November 24, 2014.

¶ 27 Respondent appeals. We affirm.

¶ 28 ANALYSIS

¶ 29 I. Motions to Continue

9

¶ 30 Respondent argues that the court erred by denying her requests for continuance of the unfitness hearing and of the best interests hearing.

¶ 31 Respondent does not have an absolute right to a continuance in proceedings pursuant to the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 *et seq.* (West 2012)); serious delay in the adjudication of abuse, neglect or dependency can cause grave harm for the minors. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36; 705 ILCS 405/2-14 (West 2012). In proceedings pursuant to the Act, the determination whether to grant a continuance is left to the discretion of the trial court. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36. We will not overturn the trial court's decision absent manifest abuse or palpable injustice. *Id.*

¶ 32 For the following reasons, we find that the court did not abuse its discretion in denying respondent's motions to continue. The court appointed four different attorneys to represent respondent. Respondent fired all four of the attorneys, each time expressing her dissatisfaction with their representation. The court originally scheduled the unfitness hearing for April 16, 2014. The court continued the trial, *twice*, in order to allow respondent's fourth court-appointed attorney (Bowton) time to prepare the case. The court finally conducted the hearing on August 20, 2014. At the start of the hearing, despite the fact that Bowton confirmed that he was ready to represent respondent, respondent informed that court that she did not want to continue with Bowton as her attorney. In addition, respondent requested a 90-day extension in order to hire private counsel. Respondent acknowledged that she had yet to hire private counsel. In fact, she informed the court that she was having a difficult time finding private counsel. Our supreme court held that we will not find an abuse of discretion in denying a continuance for substitution of counsel in the absence of ready and willing substitute counsel. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). Moreover, the court told respondent that the unfitness hearing would

10

proceed with or without Bowton. After respondent conversed with Bowton, the court, again, reminded her that the hearing would proceed regardless of whether or not she fired Bowton. Respondent stated she understood, but wished to continue without Bowton. The court discharged Bowton and conducted the unfitness hearing.

¶ 33　　　　　Respondent argues that Illinois Supreme Court Rule 13(c)(2) (eff. July 1, 2013) supports her position that the court abused its discretion in discharging Bowton, where Bowton did not give notice to the court or opposing counsel that he would be withdrawing from the case. Illinois Supreme Court Rule 13(c)(2) states:

> "An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw, by personal service, certified mail, or a third-party carrier, directed to the party represented by him at his last known business or residence address. Such notice shall advise said party that to insure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance stating therein an address at which service of notices or other documents may be had upon him." Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2013).

The rule does not apply in this case; respondent fired Bowton. Bowton did not seek to withdraw. To the contrary, Bowton informed the court that he was thoroughly prepared to represent respondent.

¶ 34       The court also did not abuse its discretion in denying the motion to continue the best interests hearing. It is not mandatory that a parent be present at a hearing terminating parental rights. *In re K.O.*, 336 Ill. App. 3d 98, 105 (2002). The court is not required to wait until the parent chooses to appear. *Id.* Further, the court does not deprive respondent her right to due process by conducting a termination hearing in her absence. *In re M.R.*, 316 Ill. App. 3d 399, 404 (2000). Respondent knew about the November 20, 2014, trial date on October 16, 2014. The court scheduled the trial for the afternoon to accommodate respondent's schedule. The court informed respondent that it would conduct the best interests hearing even if she was not present in court. Further, respondent had from August 20, 2014, until November 20, 2014, to retain private counsel for the best interests hearing. She failed to do so.

¶ 35       Moreover, respondent failed to argue that the court's denials prejudiced her. The denial of a request for a continuance is not grounds for reversal unless such denial prejudiced the complaining party. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36. Despite respondent's failure to argue prejudice, we will explain why the court's denial of the motions to continue did not prejudice respondent. No evidence established that she would have been able to retain counsel had the court continued the case. To the contrary, respondent stated that she had trouble finding private counsel. Further, respondent did not retain counsel between August 20, 2014, and September 4, 2014; at lunchtime on August 20, the court continued the unfitness hearing until September 4. On September 4, 2014, the court continued the hearing until October 16, 2014, based on respondent's statement that she had witnesses to call who were not present in court.

12

Respondent failed to call such witnesses. Respondent still had not retained private counsel as of the October 16, 2014, hearing. Moreover, respondent failed to hire private counsel between the conclusion of the unfitness hearing and the start of the best interests hearing on November 20. Therefore, the court's denial of respondent's motions to continue to hire private counsel did not prejudice respondent; respondent failed to establish that she would have retained counsel if the court granted her motion. The record supports the notion that respondent was simply stalling.

¶ 36 The evidence overwhelmingly supports the court's determination that it was in the best interests of the children to terminate respondent's parental rights. The minors' foster parents wished to adopt the children. The foster parents met the minors' needs and provided care. The minors bonded with the foster parents and were not attached to respondent. Respondent failed to provide stable housing for the minors; Dream Center kicked respondent and the children out after respondent broke the rules. She smoked marijuana while the children resided with her. Respondent also suffers from mental health issues.

¶ 37 Our supreme court stated that "the specter of delay is especially troublesome" where the case concerns the future of young children. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007). Delays in termination proceedings impose a grave cost to the lives of the children involved. *In re A.M.*, 402 Ill. App. 3d 720, 725 (2010); *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36. Here, the termination proceeding spanned over seven months. The minors' foster parents expressed their desire to adopt the minors, but cannot do so until this case is closed. We find that the court did not abuse its discretion in denying respondent's motions for a continuance.

¶ 38 We also note that respondent's statement that she is not waiving the issue of whether or not she made reasonable progress or effort toward the return home of the minors by failing to raise the issue on appeal is undoubtedly incorrect. First, she cites no authority supporting her

13

position. Further, the court issued a final order on November 24, 2014, terminating her parental rights. Appellant has 30 days after the entry of the final judgment appealed from to file a notice of appeal. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015). Moreover, Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) states: "[p]oints not argued [in appellant's opening brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." She waived the issue of whether or not she made reasonable effort or progress toward the return of her children by failing to raise it here on appeal.

¶ 39                                                    II. Due Process

¶ 40           Respondent argues that the court violated her due process rights by denying her motions to continue and conducting the best interests hearing in her absence.

¶ 41           The fourteenth amendment provides that no state shall deprive a person of life, liberty, or property without due process of law. U.S. Const., amend. XIV. Parents' interest in the care, custody, and control of their children is a fundamental liberty interest. *Lulay v. Lulay*, 193 Ill. 2d 455, 471 (2000). Procedural due process requires that the court afford respondent that opportunity to be heard at a meaningful time and in a meaningful manner. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264 (2004). However, as stated above, the court does not violate respondent's right to due process by conducting a termination hearing in her absence. *In re M.R.*, 316 Ill. App. 3d at 404.

¶ 42           We need not discuss whether the court violated respondent's right to due process by holding her in contempt of court on March 18, 2013. Respondent appeals the order that resulted from the termination proceeding, not the court's order from March 18. Respondent acknowledges that this incident occurred prior to the termination proceeding, which is at issue on this appeal.

14

¶ 43    For the same reasons detailed above, we find that the court did not violate respondent's due process rights during the termination proceeding. The court appointed four attorneys to represent respondent. The court continued the unfitness hearing for four months to provide respondent's fourth court-appointed counsel time to prepare the case. Further, the court informed respondent that it would conduct the unfitness hearing whether or not Bowton represented her. Respondent stated that she understood, but wanted to continue without Bowton. The court also continued the unfitness hearing based on respondent's representation that she had witnesses to call; respondent never called such witnesses. The court scheduled the best interests hearing for 3 p.m. on November 20, 2014, to accommodate respondent's schedule and stated that it would conduct the hearing, even if respondent was not present. Respondent knew of the hearing date, as the court set that date when respondent was present in court on October 16, 2014. Throughout the entire termination proceeding, the court continued and delayed the case to accommodate respondent.

¶ 44    We find that the court provided respondent with an opportunity to be heard at a meaningful time and in a meaningful manner.

¶ 45                                    CONCLUSION

¶ 46    For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 47    Affirmed.