2020 IL App (2d) 200237
Nos. 2-20-0237 & 2-20-0238, cons.
Opinion filed August 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* WILLOW M. and PRIMROSE M., Minors | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Ogle County. <br><br> Nos. 17-JA-26 <br> 18-JA-7 <br><br><br> Honorable <br> John B. Roe IV, <br> Judge, Presiding. |
| (The People of the State of Illinois, Petitioner-Appellee, v. Angelica M., Respondent-Appellant). | | |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following remand from a prior appeal of orders terminating the parental rights of the

respondent, Angelica M., her trial counsel, Dennis Riley, renewed his motion to withdraw as her

counsel.  The trial court denied that motion and set a date for a hearing on the State's petitions to

terminate the respondent's parental rights to her children Willow M. and Primrose M.  The court

subsequently entered orders terminating those rights.  On appeal, the respondent argues that those

orders must be vacated and the cause remanded on the grounds that the court erred by denying

Riley's motion to withdraw, pursuant to section 1-5(1) of the Juvenile Court Act of 1987 (Act)

(705 ILCS 405/1-5(1) (West 2018)) and Illinois Supreme Court Rule 13(c)(3) (eff. July 1, 2017).

She also argues that the denial of the motion to withdraw violated her due process rights.

¶ 2                                     I. BACKGROUND

¶ 3     This is the respondent's third appeal in two years from orders terminating her parental rights.  Riley served as her appointed attorney throughout.  In November 2018, the trial court terminated her rights to her four oldest children, which this court affirmed in March 2019.  *In re Sharon M.*, 2019 IL App (2d) 180760-U.

¶ 4     In 2017 and 2018, while *In re Sharon M.* was still pending, the Department of Children and Family Services took first Willow and then Primrose into temporary custody shortly after each child's birth, amid ongoing concerns about the respondent's ability to provide them with a safe environment.  The State petitioned the court to find Willow and Primrose neglected minors under the Act and to adjudicate them as wards of the court.

¶ 5     On November 28, 2017, the trial court found Willow neglected, and on January 23, 2018, it made her a ward of the court.  In October 2018, the State filed a petition to terminate the respondent's parental rights to Willow but held off seeking a trial until Primrose was also made a ward.  On January 7, 2019, the court found Primrose neglected, and it made her a ward of the court on March 14, 2019.  The State then filed a petition to terminate respondent's parental rights to Primrose and amended its termination petition regarding Willow.  The petitions alleged that the respondent had (1) failed to exercise a reasonable degree of interest, concern, or responsibility as to Willow's and Primrose's welfare; (2) failed to make reasonable progress towards the return home of the children; (3) abandoned them; and (4) demonstrated an inability to discharge parental responsibilities based upon mental impairment, mental illness, or an intellectual disability.

¶ 6     The initial hearing on fitness began on June 3, 2019.  The respondent failed to appear despite multiple notifications to appear on that date.  The State moved for a default judgment against the respondent and, over Riley's objections, the trial court granted the default judgment.

Riley then asked to be discharged as he could not make a defense on the respondent's behalf. The trial court granted the request and Riley left the courtroom before any evidence was presented. With neither the respondent nor Riley present, the hearing continued, and the court entered orders terminating the respondent's parental rights to Willow and Primrose.[1] The respondent appealed, asserting that the withdrawal of her attorney without prior notice to her violated her due process rights (see *In re M.B.*, 2019 IL App (2d) 181008, ¶ 19), and the State confessed error. This court therefore vacated the termination orders and remanded for a new hearing on the termination petitions.

¶ 7 On remand, the trial court *ex parte* reappointed Riley as the respondent's counsel. At a permanency hearing on November 5, 2019, at which the respondent again failed to appear despite having received notice, Riley orally renewed his motion to withdraw, stating that the respondent no longer wanted him to represent her. The trial court told Riley that he must reduce the request to writing and that any decision would be made at a later date. The permanency hearing was continued to November 18, 2019.

¶ 8 On that date, Riley filed and argued a written motion to withdraw. The respondent again was not present, this time because of shoulder surgery. The motion stated that Riley "was previously appointed as public defender" for the respondent but that he had determined that he was "no longer able to represent the [r]espondent [m]other based on conflicts as to how the case should be handled." Riley added that the respondent also desired that he withdraw. Riley attached to the motion an e-mail from the respondent, which stated: "I can't make it to court[,] I had right shoulder

---

[1] The June 3, 2019, orders also terminated the father's parental rights to Willow and Primrose. He did not appeal the rulings.

surgery. I would like an [*sic*] different attorney." Riley told the court that he had "talked with" the respondent by phone "probably about 45 minutes ago or so." Riley asked that the motion be granted and that the respondent be assigned another public defender, arguing "that the email [was] sufficient to show that *** she d[id] not object to [the] motion to withdraw and *** want[ed] a different attorney."

¶ 9 The State and the guardian *ad litem* objected on the grounds that the respondent's desire for new counsel was a stall tactic and that granting the motion would severely burden Willow and Primrose while a new attorney got caught up on the cases. Riley reiterated that it was his, rather than the respondent's, determination to move for his withdrawal, because he was not confident that he could represent her after failing to follow Rule 13 at the original June 2019 termination hearing. The trial court denied Riley's motion to withdraw without prejudice, stating that it would be open to further consideration if the respondent appeared at the next court date to discuss the motion. The court entered an order stating that the respondent was "aware of" Riley's motion to withdraw and requiring that the respondent be served with notice of the next court date, a status hearing on December 10, 2019.

¶ 10 At that hearing, the respondent again failed to appear, and Riley renewed his motion to withdraw. Riley reemphasized that it was his determination that he could not continue to represent the respondent. The trial court noted that the respondent did not take advantage of the opportunity to address the court regarding her desire for new counsel, and it again denied the motion to withdraw. The court rejected Riley's assertion that he could not effectively represent the respondent, telling Riley that "any error you may believe that you had done and how that affects your representation of [the respondent]" was "procedural ***, and even the Court played a role in

that." Although the court understood Riley's argument, it believed that he could effectively represent the respondent.

¶ 11     At the new termination hearing on February 20, 2020, Riley continued to represent the still-absent respondent. At the close of the hearing, the trial court entered written orders finding that the respondent was unfit and that it was in both Willow's and Primrose's best interests to terminate the respondent's parental rights. The respondent thereafter filed timely notices of appeal in both cases, and the appeals were consolidated for briefing and disposition.

¶ 12                                    II. ANALYSIS

¶ 13     On appeal, the respondent argues that the February 20, 2020 orders must be vacated and the cause remanded because (1) the trial court abused its discretion by denying Riley's November 2019 motion to withdraw, as that denial was not authorized by section 1-5(1) of the Act and Rule 13(c)(3), and (2) she was denied due process of law.

¶ 14     Section 1-5(1) of the Act provides, in pertinent part, that court-appointed counsel "shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings subject to withdrawal or substitution pursuant to Supreme Court Rules or the Code of Civil Procedure." 705 ILCS 405/1-5(1) (West 2018).

¶ 15     Under Rule 13(c)(3), a motion to withdraw "may be denied by the court if granting the motion would delay the trial of the case, or would otherwise be inequitable." Ill. S. Ct. R. 13(c)(3) (eff. July 1, 2017). Relying on *In re Rose Lee Ann L.*, 307 Ill. App. 3d 907 (1999), the respondent contends that, because the trial court did not specifically find that granting the motion to withdraw would improperly delay the trial or be inequitable, its denial of the motion was unauthorized under Rule 13(c)(3).

¶ 16    Although this argument is not without merit, we review the trial court's ruling, not its reasoning.  See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007) ("a reviewing court can uphold the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct").  We affirm the trial court's decision denying Riley's motion to withdraw, because the motion did not comply with Rule 13(c)(2).

¶ 17    Rule 13(c)(2) states, in pertinent part, that "the attorney must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw, by personal service, certified mail, or a third-party carrier," or "electronically, if receipt is acknowledged by the party." Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2017).  The motion must be in writing.  Ill. S. Ct. R. 13(c)(3) (eff. July 1, 2017).  Thus, the attorney "must submit a written motion to withdraw and provide notice to the represented party" before withdrawal is allowed.  *In re M.B.*, 2019 IL App (2d) 181008, ¶ 18; see also *Safety-Kleen Corp. v. Canadian Universal Insurance Co.*, 258 Ill. App. 3d 298, 304 (1994) (stating that an attorney cannot withdraw without proper notice to his client).

¶ 18    Rule 13(c)(2) further specifies that a withdrawing attorney must advise his client to "retain other counsel *** or file with the clerk of the court, within 21 days after entry of the order of withdrawal, a supplementary appearance stating therein an address to which service of notices *** may be made." Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2017).  An attorney's motion to withdraw that fails to advise the client to obtain substitute counsel or to file an appearance within 21 days of an order permitting withdrawal is inadequate under Rule 13(c)(2).  *People ex rel. Burris v. Maraviglia*, 264 Ill. App. 3d. 392, 398 (1993) (holding that the trial court did not abuse its discretion in denying private counsel's motion to withdraw).

¶ 19    Riley's motion to withdraw failed to comply with Rule 13(c)(2) in two respects. First, its content was deficient, as it failed to advise the respondent that she should file (either *pro se* or through new counsel) a supplemental appearance within 21 days to avoid the risk of being defaulted. See *id.* The inclusion of this statement is important because it notifies a client that an attorney's withdrawal will have certain consequences, including that the client will no longer have any representation (or even a valid appearance on file) in the eyes of the court. Here, there is no indication in the record that the trial court would have appointed new counsel for the respondent if it granted Riley's motion to withdraw.[2] Thus, it was possible that Riley's motion to withdraw could have resulted in the respondent having to represent herself. Given that the respondent was living in Wisconsin and had not been coming to court, and that the State's termination petitions alleged that the respondent had some mental impairment or intellectual disability, some discussion between Riley and the respondent about the likely consequences flowing from his withdrawal was especially important. However, neither Riley's motion nor his statements to the court show that the respondent was ever informed about those consequences or the fact that she could have been defaulted if she (or substitute counsel) did not file an appearance within 21 days. The inclusion of the warning required by Rule 13(c)(2) would have ensured that the motion at least raised the issue.

---

[2] In parental termination cases, it is not uncommon for trial courts to appoint new counsel at least once. See *In re S.W.*, 2015 IL App (3d) 140981, ¶ 32 (trial court appointed four different attorneys to represent respondent after she expressed dissatisfaction with each attorney); *In re Travarius O.*, 343 Ill. App. 3d 844, 851 (1st Dist. 2003) (trial court appointed three different attorneys for respondent after first two withdrew). However, there is no mandate or guarantee that new counsel will be appointed.

¶ 20 Second, the respondent did not receive adequate notice of Riley's motion to withdraw, as the record does not disclose that Riley ever served her with the written motion before presenting it to the trial court. Rule 13(c)(2) specifies that a motion to withdraw must be in writing and that the client must receive notice of it "by personal service, certified mail, *** a third-party carrier," or "electronically, if receipt is acknowledged by the party." Ill. S. Ct. R. 13(c)(2) (eff. July 1, 2017). Supreme court rules "have the force of law and are to be construed in the same manner as statutes." *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). When interpreting a rule, a court's primary goal is to ascertain and give effect to the intent of the drafters. *People v. Tousignant*, 2014 IL 115329, ¶ 8. The most reliable indicator of that intent is the language of the rule itself, which must be given its plain and ordinary meaning. *Id.*

¶ 21 Although the record indicates that Riley and the respondent had a telephone conversation the morning of the day that Riley filed and argued his written motion to withdraw, that is not sufficient to comply with the requirements of Rule 13(c)(2). The plain language of the rule does not allow verbal notice, such as by a telephone call, and instead requires written notice. Although electronic service is acceptable if receipt of the written motion is acknowledged, that was not present here. The e-mail from the respondent did not state that Riley actually sent her a copy of the motion by e-mail, and Riley never stated throughout the hearings that he sent her the required written notice. We acknowledge the trial court's November 18, 2019, order, stating that the respondent was generally "aware of" Riley's motion to withdraw, as well as Riley's representation that the respondent did "not object" to his motion. However, the record does not show that Riley actually served the respondent with the written motion to withdraw. Absent this, we cannot say that the order's recitation that the respondent was "aware of" the motion and Riley's representation that she did not object satisfied the formal notice requirement under Rule 13(c)(2).

¶ 22 We acknowledge that the formal requirements of Rule 13(c)(2) may be waived in certain situations. For instance, in *In re Davion R.*, 2019 IL App (1st) 170426, ¶ 73, the court held that Rule 13(c) did not apply because the record clearly showed that withdrawal was not initiated by the attorney but was instead initiated by the respondent father. The record indicated that the respondent father twice stated that he had fired the attorney and that he was present at court dates, at which he stated that he did not want the attorney to represent him and would proceed *pro se*, turning down multiple opportunities to have counsel appointed. *Id.* ¶ 71. Unlike in *Davion R.*, in the instant case, although the respondent stated in her e-mail that she "would like an [*sic*] different attorney," this was not an unequivocal statement that she was firing Riley. Further, the respondent failed to appear at the hearings on Riley's written motion to withdraw, the record does not indicate that the respondent expressed interest in proceeding *pro se*, and Riley argued at the hearings that it was his own determination that he could not continue his representation of the respondent. Thus, *Davion R.* is distinguishable. The requirements of Rule 13(c)(2) apply to this case.

¶ 23 In summary, Riley's motion to withdraw failed to comply with Rule 13(c)(2), as to both the content and the notice requirements. Therefore, granting the motion would have been error. See *In re M.B.*, 2019 IL App (2d) 181008, ¶ 18 (the trial court should not allow appointed counsel in a parental termination case to withdraw when the parent has not received adequate notice or service of the withdrawal).

¶ 24 Because we find that the trial court did not err in denying the motion, we need not address the respondent's argument that the error was not harmless because it violated her due process rights.

¶ 25                                III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Ogle County.

¶ 27    Affirmed.

**No. 2-20-0237**

| | |
|---|---|
| **Cite as:** | *In re Willow M.*, 2020 IL App (2d) 200237 |
| **Decision Under Review:** | Appeal from the Circuit Court of Ogle County, Nos. 17-JA-26, 18-JA-7; the Hon. John B. Roe IV, Judge, presiding. |
| **Attorneys for Appellant:** | Alan W. Cargerman, of Oregon, for appellant. |
| **Attorneys for Appellee:** | Eric D. Morrow, State's Attorney, of Oregon (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |